**UNITED STATES of America, Plaintiff-Appellee,**

v.

**Mary Patricia CLAY, Defendant-Appellant.**

**No. 80–5296.**

United States Court of Appeals, Fifth Circuit.

Unit B

March 5, 1981.

---

James E. Shepherd, Orlando, Fla., (Court appointed) for defendant-appellant.

Gary L. Betz, U. S. Atty., Donald E. Christopher, Robert W. Genzman, Asst. U. S. Atty., Orlando, Fla., for plaintiff-appellee.

Before GODBOLD, Chief Judge, HATCHETT, Circuit Judge, and MARKEY *, Chief Judge.

HATCHETT, Circuit Judge:

This case raises the question: What degree of suspicion is necessary to justify a security search of a traveler who appears at a boarding gate at an airport? Following precedent of this circuit, we authorize such searches on mere or unsupported suspicion. Thus, we affirm.

On January 19, 1980, at approximately 3:15 a. m., Mary Patricia Clay appeared at the Orlando International Airport security checkpoint in an effort to board an airplane. Following the procedures in effect

---

* Of the U.S. Court of Customs and Patent Appeals, sitting by designation.

at the airport, Clay placed her shoulder bag on a conveyor to pass it through the x-ray scan machine. When the bag passed through the x-ray scan machine, the security officer monitoring the machine saw a dark unidentifiable object. After determining that the bag belonged to Clay, the security officer asked permission to search the bag. With Clay's permission, the security officer opened the bag and started "digging in." The bag contained various articles, but none corresponded to the dark object which had been observed on the screen. The bag, however, contained a manila envelope, thirteen by ten in size, which could have obscured the unidentifiable object. Although it is disputed as to whether Clay consented to a search of this envelope, in the view that we take, we assume that she did not consent to a search of the manila envelope. Upon opening the manila envelope, the security officer discovered a second manila envelope which continued to obscure the substance or thing inside. This second manila envelope contained a package wrapped in a "dark plastic." The security officer unwrapped the package and discovered a clear plastic package containing a white, powdery substance, later determined to be cocaine.

At trial, Clay was convicted of one count of unlawfully and intentionally possessing with intent to distribute cocaine hydrochloride. 21 U.S.C.A. § 841(a)(1).[1] She was sentenced to eighteen months in prison to be followed by four years special parole.

Clay contends that the trial court erred in denying her motion to suppress the cocaine used as evidence at the trial.[2] Her contention is that the airport security officer lacked justification for searching her because no reason existed to suspect her as a possible skyjacker or to suspect the manila envelope as containing explosives or other incendiary devices. Although she consented to a search of her shoulder bag, she urges that the search of the envelopes was unreasonable, was beyond the scope of consent, and thus violated the fourth amendment to the Constitution of the United States.

The government, on the other hand, argues that the search was reasonable under the fourth amendment. It explains that under the standard governing airport searches announced by this circuit in *United States v. Skipwith*, 482 F.2d 1272 (5th Cir. 1973), the mere presence of a large, unidentifiable dark object in an x-ray picture of carryon luggage creates sufficient suspicion to authorize a complete search of the luggage until the objects are positively identified as harmless. In the alternative, the government asserts that because Clay voluntarily consented to a search of her shoulder bag, she waived her fourth amendment rights.

In order to determine whether the trial court erred in denying Clay's motion to suppress, we must decide whether the search of the manila envelope found in the defendant's bag violated the fourth amendment's prohibition against unreasonable searches and seizures.

Our decision is controlled by the rationale of *United States v. Skipwith*, 482 F.2d 1272 (5th Cir. 1973). In *Skipwith*, this court was presented with the question whether an airport security search, conducted at the boarding gate, violated the defendant's fourth amendment rights. In that case, a defendant appeared for boarding at a boarding gate at the Tampa International Airport. Because he met the Federal Aviation Administration anti-skyjack profile and stated that he had no identification, a deputy United States marshal detained the defendant for questioning. While questioning the defendant, the deputy marshal asked the defendant whether a bulge in his rear

---

1. Section 21 U.S.C.A. § 841(a)(1) provides, in pertinent part, that:

   (a) Except as authorized by this subchapter, it shall be unlawful for any person knowingly or intentionally—

   (1) to manufacture, distribute, or dispense, or possess with intent to manufacture, dis-

tribute, or dispense, a controlled substance . . . .

2. Neither of the parties has raised the issue, whether Clay's *own privacy interest* in the manila envelope was violated by the search. *Rakas v. Illinois*, 439 U.S. 128, 99 S.Ct. 421, 58 L.Ed.2d 387 (1978).

trouser pocket was caused by a wallet and if so, whether the wallet contained identifying papers. The defendant stated that the bulge was caused by his wallet, but that it contained no identification papers. Immediately thereafter, the defendant admitted that his name was different from that originally stated. Thereupon, the defendant was taken to the airport security office. En route to the office, another deputy marshal noticed a bulge in the defendant's front trouser pocket which he "was inclined to believe" was caused by a gun. Upon arriving at the security office, the officers required defendant to reveal the contents of his front trouser pocket. The search revealed a plastic bag containing white powder, later determined to be cocaine.

In ascertaining the standard applicable to the search in *Skipwith*, the court balanced the competing interest of public necessity of airport security, "efficacy of the search, and degree of intrusion" against the "degree and nature of the intrusion into the privacy of the person" and the effects the search has on citizens. 482 F.2d at 1275. The court concluded that "the standards for initiating a search of a person at the boarding gate should be no more stringent than those applied in border crossing situations." 482 F.2d at 1276. As such, the court held that "those who actually present themselves for boarding on an air carrier ... are subject to a search based on mere or unsupported suspicion," regardless of whether they fit an anti-skyjacking profile. *Id.* Under this standard, the court found that the search of the defendant squared with the fourth amendment.

Turning to the facts of the case under consideration, Clay presented herself at the security checkpoint for boarding, where she knew or should have known that her carryon articles were subject to search. Because the search took place in this critical zone, the standard announced in *United States v. Skipwith* is applicable. While the *Skipwith* Court applied this standard to a search of the defendant's person, it is equally applicable to a search of a passenger's carryon luggage at the security checkpoint. *Id; See also Singleton v. C. I. R.*, 606 F.2d 50 (3d Cir. 1979).

Under this relaxed standard, Clay need not fit an anti-skyjacking profile in order to justify a search of carryon articles. Nor is suspicious conduct the only requisite to a search of carryon articles in this critical zone.

We accept the government's position that under *Skipwith*, the fact that the x-ray scan machine indicated Clay's shoulder bag contained an unidentifiable dark object created sufficient suspicion to justify a complete physical search of the luggage until the object was positively identified as harmless. *Cf. United States v. Cyzewski*, 484 F.2d 509, 513 (5th Cir. 1973), *cert. dismissed*, 415 U.S. 902, 94 S.Ct. 936, 39 L.Ed.2d 459 (1974) ("search may continue until the law enforcement official satisfies himself that no harm would come from the passenger's boarding the plane"). Under the circumstances the security officer was justified in ascertaining the character of the substance contained within the manila envelope.

We find that the security officer's search of Clay's shoulder bag did not offend the fourth amendment. The trial court's decision denying Clay's motion to suppress is affirmed.

AFFIRMED.