**UNITED STATES of America,**
**Plaintiff-Appellee,**

v.

**Angel LOPEZ–PAGES,**
**Defendant-Appellant.**

**No. 84–3772.**

United States Court of Appeals,
Eleventh Circuit.

Aug. 2, 1985.

Stephen J. Finta, Fort Lauderdale, Fla., for defendant-appellant.

Paul J. Moriarty, Asst. U.S. Atty., Orlando, Fla., for plaintiff-appellee.

Before HENDERSON and CLARK, Circuit Judges, and TUTTLE, Senior Circuit Judge.

ALBERT J. HENDERSON, Circuit Judge.

Angel Lopez-Pages appeals from his drug convictions in the United States District Court for the Middle District of Florida for possession with intent to distribute cocaine hydrochloride in violation of 21 U.S.C. § 841(a)(1) and possession of marijuana in violation of 21 U.S.C. § 844(a). We affirm.

On March 8, 1984, Lopez-Pages and a female companion bought an airline ticket for a flight from Orlando to Dallas at the American Airlines ticket counter at Orlando International Airport. The ticket agent determined that the couple's characteristics matched a hijacker profile. He based this conclusion on the facts that Lopez-Pages paid cash for his tickets, did not furnish a phone number on his passenger information sheet, was Hispanic, was scheduled to board a flight within the range of Cuba, bought two one-way tickets, and declined to check any of the couple's five pieces of luggage.

The agent accepted Lopez-Pages' money and wrote the word "CODE" on the ticket jacket, indicating that the passenger met the FAA hijacker profile. The agent then told Lopez-Pages that he fit the profile and would be escorted to the airport security area for a search. According to the agent, Lopez-Pages replied that it would be "perfectly okay," and followed him to the security checkpoint. The agent kept the tickets until they arrived in the security area and handed them to security personnel.

The security officers retained the tickets and summoned the airport police. After Lopez-Pages and his companion passed through a magnetometer and their luggage through an X-ray device without incident, a security supervisor arrived and asked Lopez-Pages and his companion to follow her to a separate security office. Two city police officers arrived a moment later and accompanied the trio to the room. A pat-down search of Lopez-Pages revealed three marijuana cigarettes and a glass vial of cocaine. A search of his luggage uncovered an additional 278 grams of cocaine.

Lopez-Pages waived a jury trial and agreed for the court to render judgment on the evidence developed at a suppression hearing. At the hearing, the district court denied the defendant's motion to exclude as evidence the narcotics and certain statements by Lopez-Pages admitting to his knowledge and possession of the drugs.

He was convicted of possession of marijuana and possession with intent to distribute cocaine.

On appeal, Lopez-Pages alleges that the search at the airport security office was unconstitutional. Alternatively, he argues that he did not voluntarily enter the airport security area, and thus did not consent to the search.

## I. Airport Security Area Search

■ Because of the danger of air piracy, this circuit has long held that airport security checkpoints, like international borders, are "critical zones" in which special fourth amendment considerations apply. *United States v. Herzbrun,* 723 F.2d 773, 775 (11th Cir.1984). After an individual voluntarily presents himself at an airport security area, a resulting search does "not require probable cause or even reasonable suspicion, but instead 'mere suspicion of possible illegal activity.'" *Id.* at 776 (quoting *United States v. Skipwith,* 482 F.2d 1272, 1276 (5th Cir.1973)[1]). The facts establishing the hijacker profile are sufficient to provide the requisite "mere suspicion" necessary to conduct the searches in this case.

■ Lopez-Pages urges that the search was unconstitutionally extensive. He contends that once he and his luggage passed through the magnetometer and X-ray machine, respectively, the officers were not authorized to conduct a further pat-down or luggage search in the separate security office. Airport authorities, however, are justified in "undertaking a search with sufficient scope to reveal any object or instrumentality that [the passenger] could reasonably have used to effect an act of air piracy." *Skipwith,* 482 F.2d at 1277. Additional searches outside the perimeter of the security area are permissible " 'if, in the exercise of their professional judgment, [the authorities'] reasonable suspicions [have] not been allayed by the routine security check.'" *Herzbrun,* 723 F.2d at 777

---

**1.** In *Bonner v. City of Prichard,* 661 F.2d 1206 (11th Cir.1981) (en banc), this court adopted as precedent all decisions of the former Fifth Circuit decided prior to October 1, 1981.

(quoting *United States v. Cyzewski,* 484 F.2d 509, 514 (5th Cir.1973), *cert. dismissed,* 415 U.S. 902, 94 S.Ct. 936, 39 L.Ed.2d 459 (1974)). There was testimony at the trial that certain practices of hijackers, such as taping gasoline to their ankles, cannot be detected by the magnetometer. Record, vol. 2 at 57. In addition, under the circumstance of this case, the fact that Lopez-Pages was moved from the general security area to a private office before the pat-down search was conducted minimized, rather than enhanced, the intrusiveness of the search. *See United States v. Moreno,* 475 F.2d 44, 51 (5th Cir.), *cert. denied,* 414 U.S. 840, 94 S.Ct. 94, 38 L.Ed.2d 76 (1973). We conclude, therefore, that the searches of Lopez-Pages and his luggage at the airport security area and security office comported with constitutional standards.[2]

## II. *Consent to Search*

■ Mere suspicion justifies a search at a preboarding security area partly because "those presenting themselves at a security checkpoint thereby consent automatically to a search." *Herzbrun,* 723 F.2d at 776. Lopez-Pages maintains that he did not voluntarily present himself at the airport security area.

■ "Exceptionally clear evidence" is required to establish consent to go to a search area. *United States v. Berry,* 670 F.2d 583, 598 (5th Cir. Unit B 1982) (en banc). The government bears the burden of proving consent. *United States v. Robinson,* 690 F.2d 869, 875 (11th Cir.1982). The district court's determination that Lopez-Pages voluntarily presented himself at the security checkpoint is reviewable under the clearly erroneous standard. *Id.*

We must review the totality of the circumstances in this case to resolve this issue of consent. First, the airline agent[3] escorted Lopez-Pages to the security area and retained his ticket until he arrived at the search point where it was turned over to security personnel. Record, vol. 22 at 15–16, 41–42. *See United States v. Waksal,* 709 F.2d 653, 660–61 (11th Cir.1983); *Robinson,* 690 F.2d at 875; *Berry,* 670 F.2d at 597. Second, the agent testified that he kept the ticket so that Lopez-Pages would not leave the airport. Record, vol. 2 at 15. Third, the employee informed him that he fit the hijacker profile and would be subjected to a search. Record, vol. 2 at 14. This may have suggested that the investigation had focused on him and that a refusal to proceed to the gate would lead to formal detention. *See Robinson,* 690 F.2d at 875; *Berry,* 670 F.2d at 597. Finally, Lopez-Pages was never told he was free to leave the area. *See Waksal,* 709 F.2d at 661; *Berry,* 670 F.2d at 598.

On the other hand, Lopez-Pages' decision to go to the security area was not made in a particularly coercive atmosphere. He was accompanied through a public concourse to the security checkpoint by one unarmed ticket agent who employed no force and did not summon or threaten to call public law enforcement authorities. *See Berry,* 670 F.2d at 597. In addition, neither the agent's subjective intent to prevent Lopez-Pages from leaving nor his failure to inform him that he was free to leave is dispositive of the consent issue. *See, e.g., Schneckloth v. Bustamonte,* 412 U.S. 218, 226–27, 93 S.Ct. 2041, 2047, 36 L.Ed.2d 854, 862 (1973). Moreover, the agent did not state that Lopez-Pages would be detained for refusing to accompany him, and

---

**2.** Alternatively, we hold that a sign at the airport security checkpoint informing all persons entering the area that they will be subject to search provided the necessary consent for the searches of Lopez-Pages and his luggage, assuming that he voluntarily presented himself at the checkpoint. The sign did not limit the scope of the search. *See* Record, vol. 2 at 53.

We do not address whether a more intrusive search would be constitutionally permissible un-

der the circumstances of this case. *See Herzbrum,* 723 F.2d at 778 n. 8 (similarly deferring the issue). The fact that Lopez-Pages' traveling companion was subjected to an intrusive body-cavity search is irrelevant to the constitutionality of the search of Lopez-Pages and his luggage.

**3.** The government concedes that the ticket agent's conduct constituted official action.

asked Lopez-Pages after informing him that he fit the skyjacker profile if he wanted to check his bags, thus suggesting that his flight would proceed normally. The fact that Lopez-Pages was told that he would be escorted only to the general security area indicates that the search would not be so extraordinary that a refusal to submit to it would result in detention.

▮ There is also the important evidence that Lopez-Pages told the ticket agent that his request to accompany the agent to the security area was "perfectly okay." Record, vol. 2 at 14, 100. Although we recognize that "[e]ven verbal agreement[s] to accompany an officer should be scrutinized exceptionally closely to ensure a complete absence of coercive influence," *Berry*, 670 F.2d at 598, they are, nonetheless, probative evidence of consent. This is not a case in which the passenger was interrupted during a stopover and thereby stranded, nor one in which the defendant was pressed for time in which to make his flight, situations which may encourage speedy consent. The record shows, for example, that Lopez-Pages had between one hour and one hour and forty-five minutes from the time he bought the ticket to the time his plane was scheduled to leave. *See* Record, vol. 2 at 27, 91–92.

▮ Based on these facts, and our review of the record as a whole, we are not left with the requisite definite and firm conviction that the district court made a mistake in determining that the government had carried its burden of proving that Lopez-Pages voluntarily presented himself at the airport security checkpoint. We conclude, therefore, that the district court properly admitted the evidence obtained through the airport searches.[4]

AFFIRMED.

---

**4.** Lopez-Pages also seems to argue that the government's refusal to produce a document embodying the relevant hijacker profile is a violation of *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). Lopez-Pages, however, does not allege how the profile would be favorable to the defense or how its absence is sufficiently prejudicial.

We note also that, although the government addresses the question whether, at some point, Lopez-Pages should have been given *Miranda* warnings, Lopez-Pages does not raise the issue.