814 F.2d 1539
 55 USLW 2614
 UNITED STATES of America, Appellant,
v.
Devon Harris McKENNON, Appellee.
 No. 86-8497.
 United States Court of Appeals,
Eleventh Circuit.
 April 20, 1987.
 
 Stephen S. Cowen, U.S. Atty., Atlanta, Ga., Gloria C. Phares, U.S. Dept. of Justice, Criminal Div., Washington, D.C., for appellant.
 Bruce W. Simon, Kansas City, Mo., for appellee.
 Appeal from the United States District Court for the Northern District of Georgia.
 Before FAY and KRAVITCH, Circuit Judges, and MORGAN, Senior Circuit Judge.
 PER CURIAM:
 
 
 1
 This appeal challenges an order granting a motion to suppress. Devon Harris McKennon (hereinafter McKennon) was indicted for violations of the Controlled Substance Act, 21 U.S.C. Secs. 841(a)(1) and 846 (1982) after a warrantless search of an article of luggage in the possession of an accomplice produced a quantity of cocaine. The United States District Court for the Northern District of Georgia granted McKennon's motion to suppress evidence of the cocaine. On appeal, the United States argues that McKennon lacks standing to contest the legality of the search. For the reasons that follow, we agree and reverse the district court's order.
 
 I.
 BACKGROUND
 
 2
 On February 12, 1986, Drug Enforcement Administration (hereinafter DEA) Agent Paul Markonni[1] and others were engaged in the investigation of drug trafficking at Hartsfield International Airport in Atlanta, Georgia. At approximately 2:40 p.m., Markonni observed Anthony Hugh Gardener (hereinafter Gardener) and McKennon deplane together from a flight arriving from Miami, Florida.[2] Markonni initially suspected that Gardener and McKennon were attempting to disassociate themselves from each other, because McKennon followed Gardener down the concourse, both appeared nervous and neither gentleman initiated conversation. DEA Agent Bryan Sullivan positioned himself so that he could read Gardener's ticket as Gardener was requesting flight information at a ticket counter. With the aid of an airline agent, Sullivan ascertained that Gardener (1) made no flight reservations, (2) purchased his ticket with cash, (3) checked no luggage, and (4) left no Miami telephone number.
 
 
 3
 Sullivan followed Gardener and McKennon to a gate where the travelers were hoping to depart on a connecting flight to Kansas City, Missouri. Near the gate, Sullivan saw McKennon covertly pass a pack of cigarettes to Robin Marie Lee (hereinafter Lee) who was holding her hand behind her back. Markonni recalled seeing Lee deplane from the same flight that McKennon and Gardener took from Miami.
 
 
 4
 After receiving the cigarettes, Lee sat down in the passenger waiting area while McKennon and Gardener proceeded to a nearby cocktail lounge. With the assistance of an airline agent, Markonni discovered that an individual providing the name of "Sheila Brown" purchased a ticket from Miami to Kansas City with cash one minute after McKennon and Gardener purchased their tickets.[3] Markonni reassessed the situation and surmised that McKennon and Gardener were attempting to disassociate themselves from Lee.
 
 
 5
 Markonni approached Lee, identified himself as a Clayton County Police Officer and asked to see Lee's ticket along with some identification. Lee produced her ticket issued to "Sheila Brown" but alleged that she had no identification because her wallet had recently been stolen. When asked to state her name, Lee replied "Sheila Brown." Markonni noticed that Lee was becoming nervous and he asked her to look through her purse and find something with her name on it. After a cursory inspection, Lee informed agent Markonni that she could not find anything which would identify her.
 
 
 6
 Markonni asked Lee if she would consent to a search of her person and her carry-on bag. Lee refused. Markonni then asked Lee if she was traveling with anyone or if she had met anyone on the flight from Miami to Atlanta. Lee responded negatively. After a second request to search Lee's person and carry-on luggage was denied, Markonni asked Lee to accompany him to a private lounge approximately fifty to sixty feet away. When asked why Lee was being detained, Markonni stated that he did not believe Lee's assertion that she possessed no identification.
 
 
 7
 While waiting in the lounge, Lee admitted that she had some identification and produced some documents identifying herself as Robin Lee. Pursuant to Ga.Code Ann. Sec. 16-10-25 (1984), Markonni arrested Lee for giving a false name to a police officer. After reading Lee her Miranda rights,[4] Markonni searched Lee's carry-on bag and found a quantity of cocaine.
 
 
 8
 Meanwhile, Sullivan and another investigator interviewed Gardener and McKennon. A voluntary pat-down search produced no evidence of contraband. Gardener and McKennon voluntarily accompanied Sullivan towards the lounge where Lee had been taken. Markonni placed the gentlemen under arrest. Outside the lounge, Gardener and McKennon denied any knowledge of Lee or the cocaine. McKennon never made any attempt to exert ownership of Lee's carry-on bag.
 
 
 9
 On February 25, 1986, a federal grand jury indicted Lee, Gardener and McKennon for conspiracy and possession of cocaine with intent to distribute in violation of 21 U.S.C. Secs. 846 and 841(a)(1) (1982). McKennon filed a motion to suppress the cocaine as evidence and claimed that the search of Lee's carry-on bag violated his Fourth Amendment rights. McKennon alleged that he had a reasonable expectation of privacy in Lee's bag because he had packed the bag with his personal effects. The United States opposed the motion and a magistrate conducted a hearing on April 3, 1986.
 
 
 10
 During the suppression hearing, McKennon testified that he and Lee traveled from Kansas City, Missouri to Miami, Florida and shared a hotel room for three nights. On February 12, before checking out of the hotel, McKennon packed a medium-sized, soft-sided bag with a quantity of cocaine, a change of clothing and some personal articles belonging to Lee. McKennon gave the bag to Lee and told her "not to let anybody go in the bag except for me." Lee, who knew the bag contained cocaine, was informed that if she was delayed or detained on the way to Kansas City, McKennon intended to go on to Missouri without claiming the bag or acknowledging her.
 
 
 11
 Based upon this testimony, the magistrate found that McKennon had a reasonable belief that he maintained control over the carry-on bag and thus had standing to contest the seizure of the cocaine. The magistrate rejected the government's argument that McKennon had abandoned a reasonable expectation of privacy in the article of luggage because the magistrate noted that McKennon was never afforded the opportunity to affirmatively abdicate his interests prior to the search. Finding that the warrantless search of Lee's bag was incident to an unlawful arrest, the magistrate recommended that McKennon's motion to suppress be granted. Without further elaboration, the district court adopted the report and recommendation submitted by the magistrate. Pursuant to 18 U.S.C. Sec. 3731 (1982), the United States appealed.
 
 II.
 DISCUSSION
 
 12
 The United States alleges that the district court erred by ruling that McKennon had standing to challenge the search of Lee's carry-on bag. With all due respect to the district court, we agree. In order to have evidence suppressed based on a violation of the Fourth Amendment, a claimant has the burden of proving (1) that the search was unlawful and (2) that the claimant had a legitimate expectation of privacy. Rawlings v. Kentucky, 448 U.S. 98, 104, 100 S.Ct. 2556, 2561, 65 L.Ed.2d 633 (1980). In this case, the United States has not appealed the district court's ruling that Markonni did not have probable cause to arrest Lee. The legality of that search is not before us. Therefore, the only remaining issue which this court must address is whether McKennon had a legitimate expectation of privacy in Lee's bag when the search was conducted.
 
 
 13
 In California v. Ciraolo, --- U.S. ----, 106 S.Ct. 1809, 90 L.Ed.2d 210 (1986), the United States Supreme Court reiterated a two-part test for determining whether an individual has a "constitutionally protected reasonable expectation of privacy." Ciraolo, 106 S.Ct. at 1811 (quoting Katz v. United States, 389 U.S. 347, 360, 88 S.Ct. 507, 516, 19 L.Ed.2d 576 (1967) (Harlan, J., concurring)). First, the individual must manifest a subjective expectation of privacy in the object of the challenged search. Ciraolo, 106 S.Ct. at 1811. Second, society must be willing to recognize that expectation as legitimate.[5] Ciraolo, 106 S.Ct. at 1811; New Jersey v. T.L.O., 469 U.S. 325, 338, 105 S.Ct. 733, 742, 83 L.Ed.2d 720 (1985); Hudson v. Palmer, 468 U.S. 517, 525, 104 S.Ct. 3194, 3199, 82 L.Ed.2d 393 (1984). The first inquiry is a factual determination which is generally reviewed under a clearly erroneous standard.[6] See United States v. Edmondson, 791 F.2d 1512, 1514 (11th Cir.1986); see e.g., Ciraolo, 106 S.Ct. at 1811-12; United States v. Brown, 731 F.2d 1491, 1495 (11th Cir.) modified, 743 F.2d 1505 (11th Cir.1984). The second, and perhaps more important inquiry, is a question of law subject to de novo review. See e.g., Ciraolo, 106 S.Ct. at 1812-13; New Jersey v. T.L.O., 469 U.S. at 338-40, 105 S.Ct. at 742-43; Hudson, 468 U.S. at 525-26, 104 S.Ct. at 3199-3200.
 
 
 14
 A. The Legitimacy of McKennon's Privacy Interest.
 
 
 15
 In this case, the magistrate and the district court found that McKennon's testimony regarding the precautions taken to maintain secrecy evinced a subjective expectation of privacy. After reviewing the record, we agree with this finding of the district court. Nevertheless, a legitimate expectation of privacy "means more than a subjective expectation of not being discovered." United States v. Whaley, 779 F.2d 585, 590 (11th Cir.1986) cert. denied, --- U.S. ----, 107 S.Ct. 931, 93 L.Ed.2d 982 (1987) (quoting Rakas v. Illinois, 439 U.S. 128, 143 n. 12, 99 S.Ct. 421, 430 n. 12, 58 L.Ed.2d 387 (1978)). Assessing the legitimacy of a privacy expectation "necessarily entails a balancing of interests." Hudson, 468 U.S. at 527, 104 S.Ct. at 3200. No single factor is determinitive. Oliver v. United States, 466 U.S. 170, 177, 104 S.Ct. 1735, 1740, 80 L.Ed.2d 214 (1984). Whether society is willing to recognize an expectation of privacy as legitimate is not determined by reference to "arcane distinctions developed in property and tort law." Rakas, 439 U.S. at 143, 99 S.Ct. at 430; see Rawlings, 448 U.S. at 105, 100 S.Ct. at 2561. Thus, the mere presence of an ownership or financial interest in the item seized is not sufficient to create a legitimate expectation of privacy. Rawlings, 448 U.S. at 105, 100 S.Ct. at 2561; United States v. Sarda-Villa, 760 F.2d 1232, 1236 (11th Cir.1985). Whether an individual possesses a constitutionally protected privacy interest depends upon the totality of circumstances. Rawlings, 448 U.S. at 104, 100 S.Ct. at 2561; see Rakas, 439 U.S. at 152, 99 S.Ct. at 435.
 
 
 16
 In this case, McKennon packed the carry-on bag with the cocaine along with some personal items, transferred possession of the bag to Lee, refused to publicly associate with her on her journey, and instructed her that he would proceed to Kansas City without her in the event that she was detained. Despite the actions taken to divest himself from Lee and the luggage, McKennon now asserts that he possesses an enduring "reasonable" privacy interest in the bag by virtue of the continual presence of his personal effects.[7] Although this argument admittedly articulates a plausible privacy interest, see United States v. Freire, 710 F.2d 1515, 1519 (11th Cir.1983), cert. denied, 465 U.S. 1023, 104 S.Ct. 1277, 79 L.Ed.2d 681 (1984), it fails to satisfy the legitimacy criterion necessary to maintain a constitutionally protected expectation of privacy when subjected to societal scrutiny.
 
 
 17
 We recognize that an individual generally enjoys a reasonable expectation of privacy in personal luggage. United States v. Place, 462 U.S. 696, 707, 103 S.Ct. 2637, 2644, 77 L.Ed.2d 110 (1983); Arkansas v. Sanders, 442 U.S. 753, 762, 99 S.Ct. 2586, 2592, 61 L.Ed.2d 235 (1979); United States v. Chadwick, 433 U.S. 1, 13, 97 S.Ct. 2476, 2484, 53 L.Ed.2d 538 (1977). Nevertheless, the mere placement of personal property into a closed container does not ensure that a subjective expectation of privacy will ultimately be judged by society as legitimate. See Rawlings, 448 U.S. at 106, 100 S.Ct. at 2562. Extenuating circumstances can erode the reasonableness of a privacy expectation to the extent that the interest is not constitutionally protected. See United States v. Jacobsen, 466 U.S. 109, 125, 104 S.Ct. 1652, 1662, 80 L.Ed.2d 85 (1984) (employees of private freight carrier discover cocaine in damaged package and frustrate customer's privacy interest); Rawlings, 448 U.S. at 106, 100 S.Ct. at 2562 (claimant had no legitimate expectation of privacy in contraband placed in friend's purse); United States v. O'Bryant, 775 F.2d 1528, 1534 (11th Cir.1985) (no legitimate expectation of privacy in a briefcase left in car which was stolen). United States v. Lopez, 761 F.2d 632, 636 (11th Cir.1985) (no legitimate expectation of privacy in a secret compartment constructed in the hull of a vessel); Sarda-Villa, 760 F.2d at 1236 (no legitimate expectation of privacy in false fuel tanks placed in a vessel); United States v. Perry, 746 F.2d 713, 714 (11th Cir.1984) cert. denied, 470 U.S. 1054, 105 S.Ct. 1760, 84 L.Ed.2d 822 (1985) (no legitimate expectation of privacy in a paper bag left in a karate studio); United States v. Hawkins, 681 F.2d 1343, 1346 (11th Cir.) cert. denied, 459 U.S. 994, 103 S.Ct. 354, 74 L.Ed.2d 391 (1982) (no legitimate expectation of privacy in a disclaimed article of luggage).
 
 
 18
 It is beyond question that the government has a compelling interest in intercepting drug couriers[8] and preventing air piracy.[9] In order to advance these interests, government agencies operate surveillance programs[10] and screen carry-on luggage to ensure the safety of air travel.[11] A search of a passenger's carry-on luggage is permissible when (1) the passenger presents himself at an airport security checkpoint and the search is necessary to determine whether the luggage contains materials which would endanger the safety of the flight;[12] (2) the passenger consents to the search;[13] or (3) there is probable cause to believe that incriminating evidence will be found.[14] This court has ruled that passengers who voluntarily present themselves at airport security checkpoints automatically consent to a search of their carry-on articles. See United States v. Lopez-Pages, 767 F.2d 776, 779 (11th Cir.1985); United States v. Clay, 638 F.2d 889, 892 (5th Cir.) cert. denied, 451 U.S. 917, 101 S.Ct. 1996, 68 L.Ed.2d 310 (1981).
 
 
 19
 McKennon either knew or should have known that Lee's carry-on bag was subject to an X-ray scan and possibly a manual search as Lee entered the checkpoint area in the Miami airport. See Lopez-Pages, 767 F.2d at 778; Clay, 638 F.2d at 892. The fact that McKennon arranged for Lee to perform all of the "dirty work" and planned to continue without her in the event that she was delayed manifests McKennon's awareness of the possibility that Lee could arouse the suspicions of law enforcement officers and become the subject of an investigative detention. See Place, 462 U.S. at 706, 103 S.Ct. at 2644. Indeed, it appears that McKennon intentionally exposed Lee to the risks of criminal investigation and prosecution while attempting to shield himself from implication. By relinquishing possession and control of the carry-on bag, disassociating with Lee (both physically and orally) and sending her into an environment where a security search was certain and an investigative detention possible, McKennon assumed the risk of discovery and effectively surrendered the capacity to exclude others from the bag. See Brown, 743 F.2d at 1508.
 
 
 20
 Based on these extenuating circumstances, we find that McKennon significantly diminished the reasonableness of his expectation of privacy. After assessing the nature and quality of McKennon's privacy interest in light of the government's interest in impeding drug trafficking, we find that McKennon's expectation of privacy is too attenuated to receive constitutional protection. We do not believe that the Fourth Amendment was designed to protect the privacy interests of an individual who conspires to transport contraband, perceives the possibility that the container will be searched, severs all appreciable ties with the courier in an effort to escape criminal liability, and then asserts an interest in the container after the contraband and the conspiracy have been discovered in order to articulate an expectation of privacy and suppress evidence of criminal activity. The fact that Lee may have possessed a legitimate expectation of privacy in her carry-on bag is of no aid to McKennon. Rights secured by the Fourth Amendment are personal and cannot be vicariously asserted. United States v. Payner, 447 U.S. 727, 731, 100 S.Ct. 2439, 2444, 65 L.Ed.2d 468 (1980); Rakas, 439 U.S. at 139, 99 S.Ct. at 428; United States v. Rackley, 742 F.2d 1266, 1270 (11th Cir.1984). Based on the totality of circumstances, we conclude that McKennon has not met his burden of establishing an expectation of privacy that society is willing to recognize as legitimate.
 
 
 21
 B. Abandonment.
 
 
 22
 A related issue which merits discussion is the matter of abandonment. The district court adopted the magistrate's conclusion that McKennon did not abandon his expectations of privacy because McKennon's disclaimer of ownership or interest in Lee's carry-on bag and his disclaimer of any knowledge of Lee occurred after the search. Because we conclude that the magistrate placed undue emphasis on the timing of McKennon's disclaimer and ignored other evidence of abandonment, the district court erred in adopting the magistrate's recommendation.
 
 
 23
 Legitimate expectations of privacy can be abandoned. See Abel v. United States, 362 U.S. 217, 241, 80 S.Ct. 683, 698, 4 L.Ed.2d 668 (1960); United States v. De Parias, 805 F.2d 1447, 1458 (11th Cir.1986); United States v. Pirolli, 673 F.2d 1200, 1204 (11th Cir.) cert. denied, 459 U.S. 871, 103 S.Ct. 157, 74 L.Ed.2d 131 (1982). Abandonment involves a factual issue which is generally reviewed under a clearly erroneous standard. See United States v. Mendia, 731 F.2d 1412, 1414 (9th Cir.), cert. denied, 469 U.S. 1035, 105 S.Ct. 509, 83 L.Ed.2d 399 (1984); United States v. Alden, 76 F.2d 772, 777 (8th Cir.) cert. denied, 439 U.S. 855, 99 S.Ct. 167, 58 L.Ed.2d 161 (1978). Whether an abandonment has occurred is a question of intent which can be inferred from words, acts and other objective facts. Pirolli, 673 F.2d at 1204 (quoting United States v. Colbert, 474 F.2d 174, 176 (5th Cir.1973) (en banc)). As this court has observed, the critical inquiry is "whether the person prejudiced by the search ... voluntarily discarded, left behind, or otherwise relinquished his interest in the property in question so that he could no longer retain a reasonable expectation of privacy with regard to it at the time of the search." Pirolli, 673 F.2d at 1204 (quoting Colbert, 474 F.2d at 176) (emphasis added). This Court has specifically held that when a claimant relinquishes possession and disclaims ownership of an article of luggage, any expectations of privacy become illegitimate. Hawkins, 681 F.2d at 1345. Thus, repeated disclaimers of ownership prior to a search generally preclude assertions of privacy interests. Hawkins, 681 F.2d at 1345.
 
 
 24
 Relying on Hawkins, the magistrate determined that since McKennon's disclaimer of Lee and her luggage followed the search, no abandonment occurred because McKennon was not afforded the opportunity to affirmatively deny ownership. While we appreciate the significance of the distinction drawn by the magistrate and adopted by the district court, we do not believe that the fact that McKennon's disclaimer occurred after the contraband was in the possession of the government precludes a finding of abandonment for two reasons. First, at the time McKennon denied knowing Lee, he was not aware that the cocaine had been discovered. Second, other objective considerations established the abandonment prior to the discovery.
 
 
 25
 As previously indicated, the salient facts are that McKennon dispossessed himself of the cocaine, disassociated with Lee, and promised to disavow any knowledge of her or the contraband in the event that she was questioned. During the suppression hearing, McKennon admitted that he never intended to acknowledge an ownership interest in the bag or retake possession unless Lee reached her final destination without incident. Based upon these facts, and disregarding the question of whether McKennon's expectation of privacy was legitimate, we believe that the district court's determination that McKennon did not intend to divest himself from the carry-on bag at the time of the search sufficient to relinquish his privacy interests is clearly erroneous.
 
 
 26
 Accordingly, the district court's order granting McKennon's motion to suppress is REVERSED.
 
 
 
 [1]
 Agent Markonni testified that he has served as the senior agent in the Drug Enforcement Administration narcotics detail at the Atlanta airport since 1977 and has participated in over 600 arrests for controlled substances
 
 
 [2]
 Miami is generally considered a source city for illegal drugs. See United States v. Espinosa-Guerra, 805 F.2d 1502, 1508 (11th Cir.1986)
 
 
 [3]
 Gardener purchased his ticket in the name of "T. Gardner." McKennon purchased his ticket in the name of "D. Harris."
 
 
 [4]
 See Miranda v. Arizona, 384 U.S. 436, 467-73, 86 S.Ct. 1602, 1624-27, 16 L.Ed.2d 694 (1966)
 
 
 [5]
 The United States Supreme Court has suggested that the terms "justifiable," "reasonable," and "legitimate" are interchangeable when assessing whether an expectation of privacy is entitled to constitutional protection. See Hudson v. Palmer, 468 U.S. 517, 525, 104 S.Ct. 3194, 3199, 82 L.Ed.2d 393 (1984)
 
 
 [6]
 Binding precedent in this circuit suggests that when the district court merely adopts a magistrate's report and recommendation, reviewing courts are not bound by the clearly erroneous standard. United States v. Herbst, 641 F.2d 1161, 1167 (5th Cir.), cert. denied, 454 U.S. 851, 102 S.Ct. 292, 70 L.Ed.2d 141 (1981). The Eleventh Circuit, in Bonner v. City of Prichard, 661 F.2d 1206, 1207 (11th Cir.1981) (en banc), adopted as precedent decisions of the former Fifth Circuit rendered prior to October 1, 1981
 
 
 [7]
 The Supreme Court has recognized that the private possession of cocaine is always an illegitimate interest. United States v. Jacobsen, 466 U.S. 109, 123, 104 S.Ct. 1652, 1661, 80 L.Ed.2d 85 (1984). Thus, if McKennon has a potentially legitimate privacy interest in Lee's bag, that interest must arise from the expectations of privacy with respect to the personal effects or the container itself
 
 
 [8]
 See United States v. Mendenhall, 446 U.S. 544, 561-62, 100 S.Ct. 1870, 1880-81, 64 L.Ed.2d 497 (1980) (Powell, J., concurring)
 
 
 [9]
 See United States v. Lopez-Pages, 767 F.2d 776, 778 (11th Cir.1985); United States v. Moreno, 475 F.2d 44, 47 (5th Cir.), cert. denied, 414 U.S. 840, 94 S.Ct. 94, 38 L.Ed.2d 76 (1973)
 
 
 [10]
 Skilled government agents often identify potential drug traffickers at major airports through the use of "drug courier profiles." See Florida v. Royer, 460 U.S. 491, 493 n. 2, 103 S.Ct. 1319, 1322 n. 2, 75 L.Ed.2d 229 (1983). If continued observation indicates that a brief investigative detention is warranted, suspects will be stopped and questioned if the officer can articulate a reasonable suspicion that the passenger is carrying narcotics. See Place, 462 U.S. at 706, 103 S.Ct. at 2644
 
 
 [11]
 See Lopez-Pages, 767 F.2d at 778
 
 
 [12]
 This court has analogized airport security checkpoints with border searches. See United States v. Herzbrun, 723 F.2d 773, 775 (11th Cir.1984). Those presenting themselves at security checkpoints are deemed to consent to a search and may not revoke that consent if authorities elect to conduct a search. Herzbrun, 723 F.2d at 776. A search may be conducted if the law enforcement officer can articulate a reasonable suspicion of possible illegal activity. Herzbrun, 723 F.2d at 776. X-ray scans of narcotics in carry-on bags often result in dark, mysterious objects on the viewing screen which warrant further investigation because of the possibility that the unknown substance may endanger the safety of a flight. See Herzbrun, 723 F.2d at 777-78; see e.g., United States v. Clay, 638 F.2d 889, 892 (5th Cir.), cert. denied, 451 U.S. 917, 101 S.Ct. 1996, 68 L.Ed.2d 310 (1981); United States v. Wehrli, 637 F.2d 408, 409-10 (5th Cir.) cert. denied, 452 U.S. 942, 101 S.Ct. 3089, 69 L.Ed.2d 958 (1981)
 
 
 [13]
 See United States v. Williams, 647 F.2d 588, 591 (5th Cir.1981)
 
 
 [14]
 See Torres v. Puerto Rico, 442 U.S. 465, 471, 99 S.Ct. 2425, 2429, 61 L.Ed.2d 1 (1979)