870 F.2d 658
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Wyatt AUSTIN, Defendant-Appellant.
 No. 88-5835.
 United States Court of Appeals, Sixth Circuit.
 March 13, 1989.
 
 Before KRUPANSKY and WELLFORD, Circuit Judges, and CHARLES W. JOINER, Senior District Judge*.
 PER CURIAM:
 
 
 1
 On February 10, 1988, Memphis police officers received a tip from a reliable informant that the appellant, Wyatt Austin, was supplying a "known crackhouse" at 1160 Springdale in Memphis. On the basis of this information, the police initiated an investigation and surveillance of Mr. Austin. One officer was positioned at 2298 Dexter, Austin's residence, and another was positioned at 1160 Springdale, the home of Austin's brother. There had previously been a drug seizure and arrest at the Springdale address in which Austin had been involved.
 
 
 2
 On February 14, 1988, the officers observed the appellant traveling from 2298 Dexter to 1160 Springdale on two occasions. The first time, Austin stayed at 1160 Springdale for only a short time, and immediately following his departure, the police officer "observed a substantial amount of pedestrian traffic going to 1160 Springdale." Some of these individuals entered the apartment while others conducted what appeared to be drug transactions outside. On the second trip, Austin exchanged an item for money at 1160 Springdale. When surveillance resumed on February 16, virtually identical conduct again was observed by the police.
 
 
 3
 The police officers thereafter obtained appellant's name from the utility records of 2298 Dexter. A search warrant was issued for this address, authorizing a search of the premises, as well as a search of all automobiles and outbuildings at 2298 Dexter, and a personal search of Austin. The warrant was executed on February 18 at approximately 7:00 a.m., when, according to the police, Austin began his "shift" for the day.
 
 
 4
 As the officers approached the residence on February 18, Austin was seen leaving 2298 Dexter in a blue Camaro.[1] When the officers attempted to stop appellant, he refused initially and was observed placing a baggie containing a white material in his mouth. The officers forcibly stopped Austin, placed the car in park, and removed him from the car. A clear plastic bag was taken from Austin. The bag contained ten small individual clear plastic containers, each containing a tarnished looking substance which was later tested and found to be crack. Austin was placed under arrest and taken back to 2298 Dexter, where the officers completed their search.
 
 
 5
 Upon entering the car Austin had been driving, one of the officers observed the handle of a pistol between the console of the driver's seat. The weapon, which was in the officer's plain view, was a loaded .38 revolver. The revolver had white handles.[2]
 
 
 6
 Austin's residence, 2298 Dexter, is a duplex adjacent to 2300 Dexter, also a rental unit duplex, vacant at the time of the execution of the warrant. The backyard serving both the Dexter duplex units is surrounded by a 5 to 6 foot fence with a gate approximately 12 feet high on the side of 2298 Dexter. Behind the duplex is a concrete walk leading from the driveway at 2298 Dexter to a metal shed which is located behind 2300 Dexter.
 
 
 7
 To enter Austin's residence, the officers used a key taken from the key ring which was used by the appellant to drive the Camaro. Delores Bradley, Austin's girlfriend, was present during the search. She was arrested for possession of cocaine and marijuana found in her purse.
 
 
 8
 Officer Sowell located the metal utility shed behind the residence. Finding the shed locked, Sowell went back inside the house and asked Delores Bradley if she knew where to find a key. Bradley replied that the key to the shed was on "Wyatt's key ring," referring to the key ring obtained from the appellant. Using the keys obtained from the appellant's key ring to unlock the door to the shed, the police found a quantity of crack packaged in containers. (Altogether, there were 139 dosage units, each in a separate bag, weighing 34 grams.) A field test was performed on the material, and the result was positive for cocaine. Austin denied ownership of and control over the shed.
 
 
 9
 Austin was indicted and convicted for possession with the intent to distribute cocaine and with possession of a firearm during and in relation to a drug trafficking crime. His motion to suppress the evidence obtained during the police search was overruled. After Austin was sentenced under the Sentencing Reform Act to 160 months in prison, and he filed a timely notice of appeal with this court.
 
 
 10
 A valid search warrant may issue only upon a showing to the magistrate that probable cause exists. It is axiomatic that hindsight may not be employed in determining whether a prior arrest or search was made upon probable cause. Wong Sun v. United States, 371 U.S. 471 (1963). Because the search for the drugs in controversy was made pursuant to a warrant, we must determine whether the issuance of the warrant was based upon probable cause. The information utilized here consisted of an informer's tip and actual corroboration of that information about drug trafficking by two police officers.
 
 
 11
 The current test governing informant tips is the "totality of the circumstances" standard articulated in Illinois v. Gates, 462 U.S. 213, 238 (1983). The district judge found that the informant in this case had supplied information in the past which had resulted in several narcotics arrests and drug seizures. The informant notified the police that the resident of the duplex at 2298 Dexter was storing and selling cocaine. This information prompted the police to undertake a surveillance of the appellant who lived at this address. A tip from an informer may properly serve as a basis for probable cause, particularly if, as here, it is corroborated. See United States v. Briley, 726 F.2d 1301, 1306 (8th Cir.1984).
 
 
 12
 Police observation revealed that appellant made several quick trips to and from an address where drug dealing appeared to be carried on regularly, and that on two occasions the appellant himself exchanged a small package for money. The officers stated that in seeking the warrant, their experience indicated that drugs were being sold at 1160 Springdale. The experience and expertise of police officers may also be considered when determining probable cause. United States v. Lomas, 706 F.2d 886, 892 (9th Cir.1983), cert. denied sub nom. Margolis v. United States, 464 U.S. 1047 (1984). We are persuaded that the totality of the circumstances supported the issuance of the search warrant.
 
 
 13
 The appellant also complains that the police lacked authority to search the shed. The district court found that because the appellant denied ownership or control of the shed he had no expectation of privacy in the contents of the shed. We agree with this conclusion. He had no standing under such circumstances to object to the search. The search warrant expressly encompassed any and all outbuildings on the premises of 2298 Dexter and this, under the circumstances, included the shed. See United States v. Miller, 753 F.2d 1475 (9th Cir.1985). "[R]epeated disclaimers of ownership prior to a search generally preclude assertions of privacy interests." United States v. McKennon, 814 F.2d 1539, 1546 (11th Cir.1987) (emphasis added).
 
 
 14
 The appellant also alleges that the return on the search warrant was defective. Specifically, he notes that $260 was listed as an item seized but was not mentioned or described in the trial transcript, and that the record indicates ten bags were confiscated from the appellant's mouth but were not listed on the return.
 
 
 15
 Although it is important to have an accurate return upon a warrant, see Weeks v. United States, 232 U.S. 383 (1914), the alleged "discrepancies" in this case do not invalidate the warrant or the search. See United States v. Dudek, 530 F.2d 684, 688 (6th Cir.1976) (stating that "failure to follow the requirements of Rule 41 of the Federal Rules of Criminal Procedure pertaining to inventory of objects seized and a prompt return to the court has been held not to require invalidation of an otherwise properly issued and executed search warrant or the suppression of evidence acquired under it"), cert. denied, 434 U.S. 1037 (1978); see also Fed.R.Crim.P. 41(d). The omission of the bags found in the appellant's mouth, moreover, is attributable to the fact that they were seized in a warrantless search of Austin himself in the automobile, rather than under the authority of the warrant covering the Dexter premises. Federal Rule of Criminal Procedure 41(d), furthermore, does not require any explanation of the items seized as reflected in the trial transcript, requiring only an inventory of items seized during the search pursuant to the warrant. We find the appellant's contention to be meritless.
 
 
 16
 At trial, the prosecution introduced evidence concerning the appellant's prior arrest in 1987 at 1160 Springdale for selling crack and possessing a gun. The appellant argues that such evidence was not admissible under Federal Rule of Evidence 404(b), which provides:
 
 
 17
 Evidence of other crimes, wrongs, or acts is not admissible to prove the character of the person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.
 
 
 18
 Evidence of appellant's prior arrest was permitted to be introduced to show Austin's knowledge about activity in 1160 Springdale, an intent to participate in that illegal activity, and an absence of mistake or inadvertance. The district court therefore acted within its authority under Rule 404(b). See United States v. Ismail, 756 F.2d 1253 (6th Cir.1985), and United States v. Dabish, 708 F.2d 240 (6th Cir.1983).
 
 
 19
 The government also observes that the prior arrest was introduced to show a common plan of Austin's supplying 1160 Springdale with crack. We have approved the introduction of "like and similar" evidence to show a common plan in a narcotics case. See United States v. Ismail, 756 F.2d 1253 (6th Cir.1985), and United States v. Mahar, 519 F.2d 1272 (6th Cir.) (permitting, under Rule 404(b), the introduction of a prior bank robbery conviction to show a continuous plan or scheme to rob banks), cert. denied sub nom. Harris v. United States, 423 U.S. 1020 (1975).
 
 
 20
 Appellant finally asserts that the gun seized from the car and the narcotics seized from his mouth were inadmissible because they were seized in a warrantless search.
 
 
 21
 A warrantless stop and search of an automobile is permitted when probable cause exists that the automobile contains contraband. South Dakota v. Opperman, 428 U.S. 364 (1976). In addition, once a person is lawfully arrested, he may be searched without a warrant. Michigan v. Defillippo, 443 U.S. 31 (1979). The officers had probable cause to proceed as they did in this case.
 
 
 22
 Independent surveillance had confirmed a tip from a reliable informant that Austin was supplying a known crackhouse at 1160 Springdale. The officers knew Austin's procedures of supplying drugs and stopped him on what would logically have appeared to be his first trip of the day to the nearby Springdale house. Austin was driving a blue Camaro which he had used on previous trips to 1160 Springdale. Finally, the officers had a warrant to seize drugs from the premises Austin had just exited.
 
 
 23
 United States v. Mistretta, 109 S.Ct. 647 (1989), has decided the constitutional validity of the new sentencing act. Appellant's constitutional challenge to that act is now settled adversely to him.
 
 
 24
 We accordingly AFFIRM the convictions of appellant Austin for the reasons indicated.
 
 
 
 *
 The Honorable Charles W. Joiner, Senior United States District Judge for the Eastern District of Michigan, sitting by designation
 
 
 [1]
 This car was owned by the father of Austin's girlfriend, Delores Bradley, who also lived at the Dexter address
 
 
 [2]
 A gun that belonged to Delores Bradley, Austin's friend and companion, did not fit the description of the one found in the Camaro. Her gun had black handles. When shown the gun found by Officer Sowell, she denied ever having seen the weapon