[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 05-15674
Non-Argument Calendar

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
JUNE 22, 2006
THOMAS K. KAHN
CLERK

D. C. Docket No. 05-00044-CR-3-RV

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

CARLOS A. JONES,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Northern District of Florida

_____

**(June 22, 2006)**

Before ANDERSON, BIRCH, and MARCUS, Circuit Judges.

PER CURIAM:

Carlos A. Jones appeals from his conviction, which was imposed after he pled guilty to possession with intent to distribute 5 grams or more of cocaine base, a mixture and substance containing cocaine, and a mixture and substance

containing marijuana, in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(B)(iii), (b)(1)(C) and D. On appeal, Jones argues that the district court erred by finding that he lacked standing to contest the search of 301 Loveland Circle, where the narcotics were found.[1] After careful review, we affirm.

The facts relevant to the issue of Jones's standing are straightforward. On May 18, 2005, Jones was indicted for possession with intent to distribute 5 grams or more of cocaine base, a mixture and substance containing cocaine, and a mixture and substance containing marijuana, in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(B)(iii), (b)(1)(C) and D. Prior to trial, he filed a motion to suppress, arguing that drug evidence seized during the search of 301 Loveland Circle should be suppressed because the affidavit in support of the search warrant did not provide the requisite probable cause to justify issuance of the warrant.

In the suppression motion, Jones first claimed that he had standing to contest the search because he had a reasonable expectation of privacy at the residence primarily based on the fact that he kept some personal belongings in a room there, to which he had exclusive access. In addition to his standing argument based on an alleged expectation of privacy, Jones also asserted that there was no probable cause

---

[1] Because we affirm the district court's decision that Jones lacked standing to challenge the search, we do not reach his alternative argument that the district court erred by finding that the search warrant affidavit was supported by probable cause.

to search the Loveland Circle residence because when the warrant was executed, he was <u>residing</u> at a residence on Blue Angel Highway. Jones noted that the outstanding arrest warrant stated that he was "at an address near Blue Angel Parkway and Lillian Highway." He also asserted that the affidavit in support of the search warrant did not provide a sufficient basis to show that he was a resident of 301 Loveland Circle.

The government opposed Jones's motion, arguing (1) that Jones failed to show legal standing to challenge the warrant because he failed to establish a reasonable expectation of privacy at 301 Loveland Circle, and (2) alternatively, that there was probable cause to search the residence. The government highlighted that Jones's motion stated <u>both</u> that he had standing to contest the issuance of the search warrant <u>and</u> that he had no ties to the residence for purposes of the underlying probable-cause determination. The government also stated that Jones told law enforcement that he did not have a residence, and that he could not consent to a search 301 Loveland Circle because he did not reside there. According to the government, Jones relinquished any interest in the property such that he had no reasonable expectation of privacy as to it, citing our decision in <u>United States v. Sweeting</u>, 933 F.2d 962 (11th Cir. 1991). As for probable cause,

the government noted documents linking Jones to 301 Loveland Circle, including photographs, diplomas, receipts, bills, and medicine bottles.

The district court conducted an evidentiary hearing on Jones's suppression motion. Investigator Matthew White of the Escambia County Sheriff's Office testified that on April 14, 2005, he attempted to serve outstanding narcotics violation warrants on Jones at a car stereo facility. Jones fled in his car, eventually crashing the vehicle, and then fled on foot. He was apprehended and United States currency, cocaine, marijuana, and ecstasy pills were recovered from his vehicle. When he was apprehended and asked where he resided, he responded: "I don't live anywhere, I just go from place to place." Investigator White then checked public and utility records, all of which indicated that Jones resided at 301 Loveland Circle in Pensacola, Florida. White testified that he also learned that a vehicle registered to Jones was parked in the driveway.

When Investigator White requested Jones's consent to search the residence at 301 Loveland Circle, Jones claimed he did not reside at the residence and, therefore, could not give consent to search that address. Thereafter, White gathered additional information in support of a search warrant for the residence at 301 Loveland Circle, including information from confidential sources that there were several high-end vehicles coming to and from the residence, and that Jones

regularly drove the car that had been parked at the address, a 1999 Firebird. White also learned that Jones had purchased several of these vehicles with cash and had placed the vehicles into other people's names for registration purposes. According to Jones's criminal history, he had been arrested at least four times for felony drug trafficking offenses. White testified, based on the foregoing information, that he intended to recover from 301 Loveland Circle documents relating to Jones's "financial transactions and specifically laundering drug proceeds to purchase assets."

Investigator White prepared an affidavit based upon the public records searches, the cash purchases of vehicles, and Jones's criminal history. Using that affidavit, he applied for and received a search warrant for the residence at Loveland Circle. The subsequent search revealed documentary evidence of money laundering and narcotics. The affidavit was submitted as an exhibit at the hearing and contained White's statements that: (1) Jones had four prior arrests for distribution of narcotics; (2) there was an outstanding arrest warrant for Jones; (3) he had been arrested after fleeing and found with an amount of narcotics sufficient for distribution; (4) he had several customized, high-end vehicles; (5) he was observed distributing narcotics; (6) he paid cash for a vehicle registered in his name and found at 301 Loveland Circle, as well as for another vehicle; and (7)

according to an automobile dealer, Jones had paid cash for other vehicles and then registered them in different names.

In support of suppressing the drug evidence, Jones testified on his own behalf. He testified to the following: "My relationship with 301 is I live there - - I stay there sometime from time to time. I have a few items of my work papers and stuff over there, and I stay there maybe two, three times a week." He described the residence as a two-bedroom apartment that belonged to his aunt, and stated that one bedroom belonged to him. He also said that he expected that no one would have access to the personal belongings he kept at the residence and that he told law enforcement that he could not give consent to search the residence because it was not his apartment. He explained that he told officers that he did not have a residence because he was "on the run," had a warrant issued against him, and "wasn't living at a permanent address." Jones also said that while he stayed at the 301 Loveland Circle address "from time to time," he denied ever telling the investigating officers he did not live there.

Notably, on cross-examination, Jones denied that shoes, shoe boxes, and men's clothing found at the residence were his, and speculated that they might have belonged to his aunt's boyfriend. He denied that a diploma bearing his name and photographs bearing his likeness found at the residence were his. Jones again

6

represented that the residence was not his and that he "couldn't consent to a search," despite the fact that utility bills for the residence were in his name.

On re-direct examination, contrary to his testimony on cross-examination, Jones stated that the diploma found at the residence was his and he had placed it there, and that he had items of clothing, shoes, and papers in a room at the residence. Jones again testified that it was his aunt's house and that he believed his belongings would be safe there. He had a key to the house and there was a lock on a bedroom door in the house, to which he had access. His aunt rented the house and gave him permission to reside there, and bills related to the house were in his name.

The district court found that the facts were "almost on all fours with the Sweeting case." The court continued: "Jones can't have it both ways. You can't deny that you reside there and deny that you can give consent to search and still at the same time turn right around and say it is your residence and you have every expectation of privacy there." The district court determined that Jones lacked standing to challenge the search, and, alternatively, that there was "overwhelming probable cause for th[e] search warrant." The court then denied the motion to suppress. Jones entered a plea of guilty, reserving his right to appeal the district

court's denial of his motion to suppress, and was sentenced to 290 months' imprisonment, followed by eight years' supervised release. This appeal followed.

The Fourth Amendment prohibits "unreasonable searches and seizures." U.S. Const. amend. IV. The Supreme Court "uniformly has held that the application of the Fourth Amendment depends on whether the person invoking its protection can claim a justifiable, a reasonable, or a legitimate expectation of privacy that has been invaded by government action." Smith v. Maryland, 442 U.S. 735, 740 (1979) (internal quotations omitted). It is now well-settled that "the Fourth Amendment does not protect subjective expectations of privacy that are unreasonable or otherwise 'illegitimate.'" New Jersey v. T.L.O., 469 U.S. 325, 338 (1985) (citation omitted); see also United States v. Lehder-Rivas, 955 F.2d 1510, 1521 (11th Cir. 1992) (holding that before he can challenge search, "a defendant must demonstrate a legitimate expectation of privacy in the premises searched"). Thus, an individual who asserts standing to challenge a search bears the burden to demonstrate a legitimate expectation of privacy in the premises that "society is prepared to recognize as reasonable." Rakas v. Illinois, 439 U.S. 128, 143, n.12, 99 S.Ct. 421, 430, n.12, 58 L.Ed.2d 387 (1978) (internal quotation omitted); United States. v. Brazel, 102 F.3d 1120, 1148 (11th Cir. 1997) (finding

appellant failed to carry burden to show a legitimate expectation of privacy in a residence based upon "uncertainty as to when [he] lived there").

A person has a legitimate expectation of privacy protected by the Fourth Amendment if (1) he has a subjective expectation of privacy, and (2) society is prepared to recognize that expectation as objectively reasonable. United States v. Miravalles, 280 F.3d 1328, 1331 (11th Cir. 2002). Under the first inquiry, which is a factual determination reviewed for clear error, a court asks whether the individual has manifested "a subjective expectation of privacy in the object of the challenged search." United States v. McKennon, 814 F.2d 1539, 1543 (11th Cir. 1987) (citations omitted). The second inquiry -- whether society is willing to recognize the individual's expectation of privacy as legitimate -- is a legal question which we review de novo. See id. In reviewing the district court's determination that the defendant has not satisfied his burden, we view the evidence adduced at the suppression hearing in the light most favorable to the government. See United States v. Torres, 720 F.2d 1506, 1510 (11th Cir. 1983).

In United States v. Sweeting, 933 F.2d 962, 963 (11th Cir. 1991), which the district court found dispositive of Jones's motion, law enforcement officers had secured a residence pending a search warrant, when the defendants, who were brothers, arrived at the location. At that point, the brothers each denied any

9

relationship with the residence.  Id. at 964.  A search of the residence ultimately revealed illegal weapons and "personal documents and effects identifying the Sweeting brothers," and they were arrested and charged in connection with the weapons.  Id. at 963.  We held that the brothers lacked standing to challenge the search warrant, finding that the brothers' "temporary access to the premises along with several other members of their family" and the fact that they had some personal effects on the premises insufficient to establish "the requisite subjective expectation of privacy to assert standing when coupled with their explicit disclaimer of ownership or interest."  Id. at 964 (emphasis added).  Thus, in Sweeting, the defendants failed to satisfy their burden on the subjective component of the test for a reasonable expectation of privacy.

According to Jones's own sworn testimony at the suppression hearing, he twice denied residing at 301 Loveland Circle shortly after his arrest, and also admitted telling officers that he did not have authority to consent to a search of the residence.  His accompanying testimony was altogether inconsistent, however, as he also stated that he resided at 301 Loveland Circle from "time to time," and, at different times, both admitted and denied keeping personal effects there and having bills in his name.  Investigator White, in contrast, testified consistently that Jones

10

told him that he could not consent to a search of the residence because he did not live there, and that Jones denied having a residence.

Simply put, Investigator White's testimony, particularly when coupled with the numerous inconsistencies in Jones's statements, fully supported the district court's determination that Sweeting was dispositive -- Jones failed to meet his burden to show "the requisite subjective expectation of privacy" at 301 Loveland Circle, and, therefore, he lacked standing to contest the search of that residence. See Sweeting, 933 F.2d at 963-64.[2]  On this record, we can find no clear error in the district court's factual findings and no legal error in its rejection of Jones's asserted subjective expectation of privacy.  Nor can we conclude, based on our de novo review, that, under the peculiar circumstances of this case, society is prepared to recognize Jones's expectation of privacy as objectively reasonable. Accordingly, the district court correctly denied Jones's motion based on his lack of standing.

**AFFIRMED.**

---

[2]  After the parties filed their briefs, the Supreme Court decided Georgia v. Randolph, 126 S. Ct. 1515 (Mar. 22, 2006).  In Randolph, the Court held that "if a potential defendant with self-interest in objecting is in fact at the door and objects, the co-tenant's permission does not suffice for a reasonable search, whereas the potential objector, nearby but not invited to take part in the threshold colloquy, loses out." Id. at 1527.  Randolph does not invalidate our decision in Sweeting, nor does it change the outcome here since Jones's argument, like the brothers' argument in Sweeting, is not based on a co-tenant's consent to search the home over the objection of a potential defendant (here Jones), but rather, concerns a search pursuant to a warrant, which can occur without any consent.