[No. C049959. Third Dist. Mar. 11, 2008.]

THE PEOPLE, Plaintiff and Respondent, v.
JASON TOLLIVER et al., Defendants and Appellants.

**[CERTIFIED FOR PARTIAL PUBLICATION\*]**

---

\*Pursuant to California Rules of Court, rule 8.1110, this opinion is certified for publication with the exception of parts I, II, III, IV, V, VII, VIII, IX, X, and XI.

**COUNSEL**

Marilyn G. Burkhardt, under appointment by the Court of Appeal, for Defendant and Appellant Jason Tolliver.

Jerald W. Newton and Terrence A. Roden for Defendant and Appellant Antonio Villasenor.

Bill Lockyer and Edmund G. Brown, Jr., Attorneys General, Dane R. Gillette and Mary Jo Graves, Chief Assistant Attorneys General, Michael P. Farrell, Assistant Attorney General, J. Robert Jibson and Jesse Witt, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

**NICHOLSON, J.**—Defendants Jason Tolliver and Antonio Villasenor were involved in a large-scale drug trafficking enterprise. Convicted by jury and sentenced to state prison, they each appeal. In the published portion of this opinion, we conclude that Villasenor did not have a legitimate privacy interest in his vehicle because he disassociated himself from the vehicle to avoid having it connected to him in the event it was stopped during its use in the drug trafficking. In the unpublished portion of this opinion, we find no merit in Villasenor's remaining contentions. As to Tolliver, however, we conclude, also in the unpublished portion of the opinion, that his sentence must be reversed and the matter remanded for a new trial concerning whether one of his prior convictions was for a serious felony.

### PROCEDURE

By indictment and later amendments to the indictment, Tolliver and Villasenor were charged, along with 13 others. The counts applicable to Tolliver and Villasenor were as follows:

—Count one (Tolliver and Villasenor), conspiracy to transport cocaine between noncontiguous counties (Health & Saf. Code, § 11352, subd. (b); Pen. Code, § 182, subd. (a)(1)), with the following additional allegations: (1) the offense involved more than 40 kilograms of cocaine (Health & Saf. Code,

§ 11370.4, subd. (a)(5)); (2) Villasenor and Tolliver were substantially involved in the planning, direction, execution or financing of the underlying offense (Health & Saf. Code, § 11370.4, subd. (a)); (3) a principal was armed with a firearm during the commission of the offense (Pen. Code, § 12022, subd. (a)(1)); (4) Villasenor induced others to participate in the offense or occupied a position of leadership in its commission (Cal. Rules of Court, rule 4.421(a)(4));

—Count two (Villasenor), conspiracy to use a minor to transport cocaine (Health & Saf. Code, § 11353, subd. (b); Pen. Code, § 182, subd. (a)(1));

—Count four (Tolliver and Villasenor), conspiracy to transport and sell cocaine (Health & Saf. Code, § 11352, subd. (a); Pen. Code, § 182, subd. (a)(1)), with the additional allegation that a principal was armed during the commission of the offense (Pen. Code, § 12022, subd. (a)(1));

—Count five (Tolliver and Villasenor), conspiracy to transport and sell methamphetamine (Health & Saf. Code, § 11379, subd. (a); Pen. Code, § 182, subd. (a)(1)), with the additional allegation that a principal was armed during the commission of the offense (Pen. Code, § 12022, subd. (a)(1));

—Count six (Tolliver and Villasenor), sale of methamphetamine (Health & Saf. Code, § 11379, subd. (a));

—Count eight (Villasenor), sale of cocaine (Health & Saf. Code, § 11352, subd. (a));

—Count eleven (Villasenor), possession of a false compartment to conceal a controlled substance (Health & Saf. Code, § 11366.8, subd. (a));

—Count twelve (Villasenor), possession of a false compartment to conceal a controlled substance (Health & Saf. Code, § 11366.8, subd. (a));

—Count thirteen (Tolliver), possession of methamphetamine for sale (Health & Saf. Code, § 11378), with an additional allegation that he possessed the methamphetamine in crystalline form (Pen. Code, § 1170.74); and

—Count fourteen (Tolliver), possession of cocaine (Health & Saf. Code, § 11350, subd. (a)).

An amendment to the indictment further alleged that Tolliver was convicted of two prior serious felonies: a 1992 conviction for brandishing a firearm against a person in a motor vehicle and a 1992 conviction for assault with a firearm.

A jury found Tolliver guilty on counts four, five, six, thirteen, and fourteen. It found true the allegation that he possessed methamphetamine in crystalline form, but found not true the arming allegations. The jury was unable to reach a verdict on count one, as to which the trial court declared a mistrial and later dismissed on the prosecution's motion. The jury found that Tolliver had two prior convictions, and the court found that those prior convictions were for serious felonies.

The same jury found Villasenor guilty on all counts alleged against him except count six, on which the jury found Villasenor not guilty. The jury also found true all of the additional allegations relating to Villasenor.

At Tolliver's sentencing, the court granted Tolliver's motion to strike the prior serious felony findings as they related to counts four, five, thirteen, and fourteen. But the court denied the motion as to count six. It sentenced Tolliver to 25 years to life in state prison on count six and a middle term of two years, consecutive, on count thirteen. The terms for the remaining counts were imposed as concurrent terms, giving Tolliver a total determinate term of two years and an indeterminate term of 25 years to life in state prison.

At Villasenor's sentencing, the trial court imposed the upper term of nine years for count one, plus consecutive 20-year and one-year terms for the weight and arming enhancements, respectively. The court imposed the middle term for each of the remaining counts and either stayed the term pursuant to Penal Code section 654 or made the term concurrent to the term imposed for count one. Villasenor's total determinate term was 30 years.

## FACTUAL BACKGROUND

Because of the nature of defendants' contentions on appeal, it is unnecessary to recount the details of the two-year investigation of the crimes. We therefore provide only a brief summary of the illegal activities in which Tolliver and Villasenor engaged and add details, as needed, in the discussion of their contentions on appeal.

An investigation conducted by a multiagency task force uncovered a large drug-trafficking operation that, among other illegal activities, sought to transport large quantities of cocaine from Texas to Sacramento. Using numerous investigative techniques, such as informants, searches, visual surveillance, and wiretapping, the investigators were able to identify Tolliver and Villasenor as participants in the illegal activities. Villasenor, along with John Quintero, was at the head of the organization, while Tolliver distributed controlled substances.

In early 2002, the investigation revealed trips between Texas and Sacramento on behalf of the trafficking operation. Jesse Vasquez, who worked under Villasenor in the organization, sent Sandra Cortez, a load car driver from Sacramento, on two trips to Texas and back. After Cortez's trips, Vasquez sent Joseph Duarte, another load car driver, to Texas in a Chrysler Concorde that had a false compartment installed in the trunk. While waiting in Texas for the directive to return to Sacramento, Duarte got cold feet and returned to Sacramento, leaving the Concorde in Texas. Other recruits took over and started the trip back to Sacramento in the Concorde and a maroon Lincoln.

On May 16, 2002, the investigators, who had tracked the Concorde as it traveled, arranged for law enforcement in Texas to stop the Concorde and Lincoln. The resulting search revealed about 49 kilograms of cocaine stashed in the false compartment of the Concorde. On the same day, Villasenor's home was searched, as well as a vehicle in his driveway. A firearm was found in the vehicle. Tolliver's residence was also searched that day, and a significant amount of methamphetamine was found.

I–V*

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

## VI

### *Privacy Interest in Concorde*

Villasenor moved to suppress evidence obtained as a result of law enforcement's seizure of his 1993 Chrysler Concorde and installation of a GPS tracking device and subsequent tracking of the Concorde. The trial court denied the motion. It concluded that Villasenor did not have a reasonable expectation of privacy in the Concorde because he disassociated himself from the Concorde to avoid having it connected to him in the event it was discovered during its use in the drug trafficking. Villasenor argues, on appeal, that the trial court's denial of the motion to suppress was error because Villasenor owned the Concorde and therefore had a privacy interest in it. We agree with the trial court that, under the circumstances of this case, Villasenor did not have a legitimate expectation of privacy in the Concorde.[8]

---

*See footnote, *ante*, page 1231.

[8] "Legitimate" and "reasonable" are interchangeable terms in expectation of privacy analysis. (See *Hudson v. Palmer* (1984) 468 U.S. 517, 525 [82 L.Ed.2d 393, 402, 104 S.Ct. 3194] [using the terms alternatively].)

## A. *Facts and Procedure*

On March 21, 2002, Villasenor sent his brother, Raymond, to Grass Valley to purchase a 1993 Chrysler Concorde that Villasenor had read about in a newspaper advertisement. He gave Raymond money, about $3,000 in cash, for the purchase. Villasenor did not sign any paperwork for the car and his name was not listed on the pink slip. Raymond's name was listed on the pink slip and the release of liability. Villasenor did not register the car with the Department of Motor Vehicles, and he did not obtain insurance under his name. He followed this procedure because he intended to use the car to transport controlled substances and he did not want the car associated with himself in any way. He knew that Duarte, the load car driver, would be taking the car to Texas, and he did not want the car to be associated with him if Duarte was caught and the car was searched.[9]

Through its investigation of Villasenor's drug-related activities, the Sacramento County Sheriff's Department concluded Villasenor and his coconspirators would use the Concorde as a load car to transport controlled substances. On this basis, the trial court issued a search warrant authorizing entry into the Concorde and installation of a GPS tracking device. The warrant also authorized the tracking device to remain in place for 10 days to transmit information to law enforcement and delayed for 10 days the sheriff's department's duty to notify the owner of the search.

Villasenor sent the Concorde to an automobile body shop to have a secret compartment installed. The proprietor of the shop cooperated with the sheriff's department and provided access to the car. The tracking device was installed in the Concorde on April 11, 2002, but it was thereafter determined that the signal was too weak. On April 12, the shop proprietor drove the Concorde to a supermarket parking lot where an officer entered the car again and installed a new antenna. No new warrant was obtained for the second entry. Three times, on April 19, April 29, and May 9, the sheriff's department obtained a court order extending by 10 days the time within which law enforcement was required to notify the owner about the search. On May 16, the Concorde, having been tracked to Texas, was stopped there and controlled substances were found during a search.

Villasenor filed a motion to suppress the evidence obtained by tracking the Concorde. In support, he filed, among other things, his own declaration

---

[9] Villasenor included evidence presented during trial in his discussion of this issue. When reviewing the trial court's denial of a motion to suppress, we consider only the evidence presented to the trial court in connection with that motion. (*People v. Gibbs* (1971) 16 Cal.App.3d 758, 761 [94 Cal.Rptr. 458].) Therefore, we will not consider the additional trial evidence cited by Villasenor on appeal.

asserting his ownership of the Concorde. After an evidentiary hearing in which Villasenor testified, the trial court denied the motion. In doing so, the court provided an extensive analysis of the issue of standing—whether Villasenor had a legitimate expectation of privacy. Finding Villasenor had no standing, the court did not make any factual determinations or provide analysis beyond that necessary to the standing issue.

The trial court reasoned that, although Villasenor owned the car, having paid for it and never relinquished ownership, he took several steps to distance himself from the car. The purpose of this disassociation was to prevent law enforcement from determining that he was involved if the car was stopped and controlled substances were found. Because Villasenor purposefully distanced himself from the car to avoid detection, the law, according to the trial court's reasoning, does not recognize his expectation of privacy as legitimate.

### B. *Standard of Review*

" 'An appellate court's review of a trial court's ruling on a motion to suppress is governed by well-settled principles. [Citations.] [¶] In ruling on such a motion, the trial court (1) finds the historical facts, (2) selects the applicable rule of law, and (3) applies the latter to the former to determine whether the rule of law as applied to the established facts is or is not violated. [Citations.] "The [trial] court's resolution of each of these inquiries is, of course, subject to appellate review." [Citations.] [¶] The court's resolution of the first inquiry, which involves questions of fact, is reviewed under the deferential substantial-evidence standard. [Citations.] Its decision on the second, which is a pure question of law, is scrutinized under the standard of independent review. [Citations.] Finally, its ruling on the third, which is a mixed fact-law question that is however predominantly one of law, . . . is also subject to independent review.' " (*People v. Alvarez* (1996) 14 Cal.4th 155, 182 [58 Cal.Rptr.2d 385, 926 P.2d 365].)

### C. *Factual Determinations*

The facts were essentially undisputed, but, on appeal, Tolliver fails to recognize the reasonable inferences to be drawn from the evidence. He focuses only on the ownership aspect of the analysis. The trial court, however, agreed that Villasenor had an ownership interest and may have even had a subjective expectation of privacy. The essential facts, supported by substantial evidence and crucial to our analysis, as will be seen, are those leading to an inference that Villasenor's own actions delegitimized his privacy interest in the Concorde. As the trial court found, Villasenor's actions constituted a premeditated deceit, a design to avoid detection and prosecution for felonious conduct.

D. *Legitimacy of Villasenor's Privacy Interest*

■ To obtain suppression of evidence discovered in an unlawful search, a defendant has the burden of proving that he had a legitimate expectation of privacy. (*Rawlings v. Kentucky* (1980) 448 U.S. 98, 104 [65 L.Ed.2d 633, 641, 100 S.Ct. 2556].) Whether the defendant had a legitimate expectation of privacy is subject to a two-part test: (1) did the defendant manifest a subjective expectation of privacy in the object of the search? and (2) is society willing to recognize the expectation of privacy as legitimate? (*California v. Ciraolo* (1986) 476 U.S. 207, 211, 219–220 [90 L.Ed.2d 210, 215, 220–221, 106 S.Ct. 1809].) Here, the trial court based its resolution of the issue of the second part of the test—that is, whether society is willing to recognize the expectation of privacy as legitimate. We will do the same, because it is dispositive.

■ The legitimacy of the expectation of privacy is determined under the totality of the circumstances. "It is settled law that a disclaimer of proprietary or possessory interest in the area searched or the evidence discovered terminates the legitimate expectation of privacy over such area or items. [Citation.]" (*People v. Stanislawski* (1986) 180 Cal.App.3d 748 [225 Cal.Rptr. 770]; see also *United States v. Hawkins* (11th Cir. 1982) 681 F.2d 1343 (*Hawkins*).) In *Hawkins*, the defendant denied ownership of a suitcase at the time of a warrantless search. However, at his suppression hearing, he claimed that he owned the suitcase and the heroin found in it. The *Hawkins* court held that the defendant's disclaimer of ownership at the time of the search was inconsistent with his later claim of a privacy interest and defeated that claim. (*Hawkins, supra*, at p. 1346.)

Although cases such as *Hawkins* are analogous to this case, they are not precisely on point because Villasenor did not verbally disclaim the Concorde before it was searched. What he did, however, was more reprehensible. While in *Hawkins*, the defendant, acting on the spur of the moment, disclaimed ownership of a suitcase that he knew contained a controlled substance, Villasenor orchestrated an attempt to accomplish the same purpose by careful advanced planning and exploitation of others. As one of the leaders of the conspiracy, he sought to have others take the blame if the illegal acts were detected. Under these circumstances, we agree with the trial court that society does not recognize as legitimate any subjective expectation of privacy that Villasenor had. His expectation of privacy was illegitimate. (*California v. Ciraolo, supra*, 476 U.S. at pp. 207, 211, 219–220.)

The decision of the 11th Circuit of the United States Court of Appeals in *U.S. v. McKennon* (11th Cir. 1987) 814 F.2d 1539 (*McKennon*) supports this conclusion. In *McKennon*, the defendant and his girlfriend planned to fly

from Florida to Missouri. The defendant packed a soft-sided bag with cocaine, a change of clothing, and some of his girlfriend's personal items. He gave his girlfriend the bag and told her not to let anyone look in the bag except him. He told her that, if she was delayed or detained, he would go on to Missouri without claiming the bag or acknowledging he was with her. At the airport, investigators observed that the defendant and his girlfriend were together, even though they tried to make it appear they were not. The bag was searched, the cocaine discovered, and the defendant and his girlfriend arrested. (*McKennon, supra*, 814 F.2d at p. 1542.) Prosecuted for possession of the cocaine, the defendant moved to suppress the evidence, claiming an expectation of privacy in the bag and illegal seizure. The trial court granted the motion, finding that the defendant had a privacy interest in the bag, but the 11th Circuit reversed. (*Id.* at pp. 1542, 1546.)

█ The *McKennon* court addressed the issue of whether the defendant's expectation of privacy was legitimate. It determined that the defendant took steps to disassociate himself from the bag and intentionally put his girlfriend at risk of detection and prosecution for possession of the cocaine. The court concluded that the defendant "significantly diminished the reasonableness of his expectation of privacy. After assessing the nature and quality of [the defendant's] privacy interest in light of the government's interest in impeding drug trafficking, we find that [the defendant's] expectation of privacy is too attenuated to receive constitutional protection. We do not believe that the Fourth Amendment was designed to protect the privacy interests of an individual who conspires to transport contraband, perceives the possibility that the container will be searched, severs all appreciable ties with the courier in an effort to escape criminal liability, and then asserts an interest in the container after the contraband and the conspiracy have been discovered in order to articulate an expectation of privacy and suppress evidence of criminal activity." (*McKennon, supra*, 814 F.2d at p. 1545.)

█ The same is true here. Villasenor conspired to transport controlled substances, foresaw the possible search of the car, disassociated himself from the car, and now asserts that he had a constitutionally protected privacy interest in the car. Because the Fourth Amendment was not intended to protect this type of illegitimate privacy interest, Villasenor's attempt to assert such an interest fails.

█ *McKennon* also held that disclaimer of an interest in the property, such as happened in *Hawkins*, need not occur before the search or seizure if the circumstances of the case show that the defendant intended to disclaim an interest if a search was conducted and contraband found. (*McKennon, supra*, 814 F.2d at p. 1546.) That is clearly the case here. Villasenor intended to disclaim an interest in the Concorde if it was searched and contraband found.

He took all of the steps to prepare for such a disclaimer. He had someone else purchase the car. He avoided registering or insuring it in his name. He intended to have someone else drive the car when it was loaded with a controlled substance. Villasenor admitted that he took these steps to disassociate himself from the car because he intended to use the car to transport controlled substances. Therefore, Villasenor abandoned his privacy interest in the car and the privacy interest he asserted in his motion to suppress was illegitimate.

Villasenor's arguments that he had a legitimate expectation of privacy in the Concorde are without merit. He asserts that (1) he had a property right in the Concorde giving him the ability to challenge state action (citing *Soldal v. Cook County* (1992) 506 U.S. 56, 62 [121 L.Ed.2d 450, 458–459, 113 S.Ct. 538]), (2) installation of the GPS tracking device was a seizure of the Concorde for purposes of constitutional analysis (citing conc. opn. of Kleinfeld, J., in *U.S. v. McIver* (9th Cir. 1999) 186 F.3d 1119, 1133–1134), and (3) his ownership interest in the Concorde created a privacy right (citing *Rakas v. Illinois* (1978) 439 U.S. 128, 143, fn. 12 [58 L.Ed.2d 387, 401–402, 99 S.Ct. 421]). None of these assertions addresses or detracts from the trial court's (and our) conclusion that Villasenor's expectation of privacy was illegitimate because of his actions. (See *People v. Ault* (2004) 33 Cal.4th 1250, 1268, fn. 10 [17 Cal.Rptr.3d 302, 95 P.3d 523] [cases not authority for propositions not considered].)

We therefore conclude the trial court properly denied Villasenor's motion to suppress evidence obtained from the search of the Concorde.[10]

## VII–XI[*]

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

[10] After arguing that the trial court erred in finding that he did not have a legitimate expectation of privacy in the Concorde, Villasenor also argues that evidence obtained as a result of the installation of the GPS tracking system in the Concorde must be suppressed because (1) the officers did not obtain a warrant to reenter the Concorde and install a new antenna and (2) the GPS tracking system was used after the warrant authorizing its use had expired. We need not consider these arguments because, having had no legitimate expectation of privacy in the Concorde, Villasenor cannot raise them. (*California v. Ciraolo, supra*, 476 U.S. at p. 211 [constitutionally protected privacy interest the touchstone of suppression analysis].)

In addition to his argument that the trial court was correct in concluding that Villasenor did not have a legitimate expectation of privacy in the Concorde, the Attorney General argues that (1) entry into the Concorde was accomplished pursuant to a valid warrant, (2) no warrant was required for entry into the Concorde because it was illegal to possess the Concorde with a hidden compartment, and (3) no warrant was required to track the Concorde through the use of the GPS tracking system. We also need not consider these contentions, having determined that Villasenor did not have a legitimate expectation of privacy in the Concorde.

[*]See footnote, *ante*, page 1231.

## DISPOSITION

As to Tolliver, the sentence is reversed and the matter is remanded for retrial of whether the prior conviction for violation of Penal Code section 417.3 was a conviction for a serious felony and for resentencing. In all other respects, the judgment against Tolliver is affirmed.

As to Villasenor, the judgment is affirmed.

Scotland, P. J., and Morrison, J., concurred.

A petition for a rehearing was denied April 10, 2008, and the opinion was modified to read as printed above. The petition of appellant Antonio Villasenor for review by the Supreme Court was denied June 18, 2008, S162946. George, C. J., Werdegar, J., and Corrigan, J., did not participate therein.